UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH CAMPBELL, <br><br> Plaintiff, <br><br> v. <br><br> FREEDOM MORTGAGE CORPORATION, <br><br> Defendant. | No. 22 CV 1479 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Defendant Freedom Mortgage Corporation initiated foreclosure proceedings on plaintiff Joseph Campbell's home in 2018. In doing so, Campbell says, Freedom Mortgage committed Intentional Infliction of Emotional Distress and violated the Illinois Consumer Fraud and Deceptive Business Practices Act. Campbell sued, and Freedom Mortgage moved to dismiss on statute-of-limitations grounds. Campbell moved for leave to file an amended complaint, which Freedom Mortgage opposes. I grant Campbell's motion, [13], in part, and terminate as moot Freedom Mortgage's motion to dismiss, [9].

**I. Legal Standard**

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but may deny leave to amend in the case of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). An amendment may be futile when it fails to state

a valid theory of liability or could not withstand a motion to dismiss. *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). "Where it is clear that the defect cannot be corrected," leave to amend can be denied. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). But "[s]uch cases of clear futility at the outset…are rare." *Id.*

The statute of limitations is an affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014). Complaints need not anticipate and plead around affirmative defenses, like a statute-of-limitations defense, so a motion for leave to amend should only be denied where the complaint "plainly reveal[s]" that the action is time-barred. *Cf. id.* at 613–14 (stating that a motion to dismiss should only be granted in those circumstances).

## II. Facts

Joseph Campbell is the mortgagor of a single-family residence in Montgomery, Illinois. [13-1] ¶ 9.[1] The note and mortgage for his loan are backed by the Federal Housing Administration and insured by the Department of Housing and Urban Development. [13-1] ¶ 10. On June 19, 2018, Freedom Mortgage, a mortgage lender and servicer, initiated a foreclosure action against Campbell in the Circuit Court of Kendall County. [13-1] ¶ 12. About a month later, Campbell filed a motion to dismiss, alleging that Freedom Mortgage didn't follow HUD guidelines incorporated into the mortgage and note. [13-1] ¶¶ 11, 13. The parties filed further briefs and after oral

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the proposed amended complaint that Campbell filed as an exhibit to his motion for leave to amend. [13-1].

2

argument on April 3, 2019, the court dismissed Freedom Mortgage's complaint. [13-1] ¶¶ 14–16. According to Campbell, the stress of the proceedings and the fear and uncertainty that came from not knowing what would happen to their home led Campbell's wife to miscarry and become severely depressed. [13-1] ¶¶ 17–18. It also led Campbell and his wife to split up. [13-1] ¶ 18.

On January 18, 2022, Freedom Mortgage initiated a second foreclosure action against Campbell. [13-1] ¶ 19. Campbell moved to dismiss, alleging Freedom Mortgage failed to follow HUD loss-mitigation pre-foreclosure guidelines. [13-1] ¶ 20. Shortly after, Freedom Mortgage moved to dismiss its own complaint. [13-1] ¶ 21. On May 22, 2022, the case was dismissed. [13-1] ¶ 22.

Shortly before that dismissal, in March 2022, Campbell brought this suit. [1]. He alleged Intentional Infliction of Emotional Distress and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). [1] ¶¶ 21–58. After Freedom Mortgage moved to dismiss the complaint on statute-of-limitations grounds, [9], Campbell moved for leave to file an amended complaint, [13]. The proposed amended complaint, a copy of which he attached to his motion, adds two counts: violation of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531, *et seq.*, and violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. [13-1] ¶¶ 23, 57–62. (Campbell dropped his CFPA claim in his reply brief. [17] at 1.) The amended complaint also includes allegations about the second foreclosure proceeding. [13-1] ¶ 19. Freedom Mortgage opposes Campbell's motion to amend.

3

[16]. It says amendment would be futile because Campbell's original claims remain time-barred, and his RESPA claim is also outside the statute of limitations. [16].

**III.    Analysis**

    **A.    Intentional Infliction of Emotional Distress**

The statute of limitations in Illinois for a claim for Intentional Infliction of Emotional Distress is two years after the claim accrues. 735 ILCS 5/13-202; *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). "In general, under Illinois law, the statute of limitations clock begins to run when facts exist that would authorize the bringing of a cause of action." *Stark v. Johnson & Johnson*, 10 F.4th 823, 828 (7th Cir. 2021). "[W]here there is a single overt act from which subsequent damages may flow, the statute [of limitations] begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier*, 207 Ill.2d at 279; *see also Austin v. House of Vision, Inc.*, 101 Ill.App.2d 251, 256 (1st Dist. 1968) (claim accrues on "date on which there is a wrongful invasion of personal or property rights, regardless of the time when the full extent of the injury or damages sustained is ascertained").

Campbell alleges that Freedom Mortgage intentionally inflicted emotional distress by "fail[ing] to evaluate [him] for loss mitigation prior to initiating foreclosure," knowing the "probability that their conduct would cause Campbell to suffer severe emotional distress for fear of losing his home or being liable for a house that has depreciated while the balance has increased." [13-1] ¶¶ 64, 66. Even before Freedom Mortgage foreclosed, plaintiff knew about defendant's failure to provide loss-mitigation options. [13-1] ¶ 65 ("Campbell pleaded with [defendant's] agents to

help him at least be reviewed for loss mitigation, but they ignored his requests."). As defendant notes, this means Campbell's claim accrued before Freedom Mortgage initiated foreclosure proceedings and therefore outside the statute of limitations. *See* [10] at 4 (argument incorporated into defendant's Motion in Opposition to Leave to Amend, [16] at 6). The Intentional Infliction of Emotional Distress Claim is untimely based on the complaint's allegations and amendment would be futile.

B.  **Illinois Consumer Fraud and Deceptive Business Practices Act**

ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416–17 (2002). The Act prohibits certain enumerated practices, as well as those practices described in 815 ILCS 510/2, the Uniform Deceptive Trade Practices Act. 815 ILCS 505/2.

In determining whether a given course of conduct or act is unfair under the Act, I must look to the Federal Trade Commission's and federal courts' interpretations of Section 5(a) of the Federal Trade Commission Act. 815 ILCS 505/2. In *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, the United States Supreme Court relied on the factors the FTC considers to measure unfairness. 405 U.S. 233, n.5 (1972). Those factors are: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

5

whether it causes substantial injury to consumers." *Id.* (quoting 29 Fed. Reg. 8355 (1964)). Not all three factors need to be satisfied for a practice to be unfair under ICFA. *Robinson*, 201 Ill.2d at 418.

The statute of limitations under ICFA is three years. 815 ILCS 505/2, 10a(e). An ICFA claim accrues on the date a plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414 (1981)); *accord Kjarsgaard v. Reilly*, 2022 IL App (1st) 211459-U ¶¶ 34–35; *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

Campbell alleges that Freedom Mortgage violated ICFA in a number of ways. He says Freedom Mortgage failed to provide him the notice required by the Illinois Homeowner Protection Act. [13-1] ¶¶ 45b, 48. That Act expired July 1, 2016, roughly two years before Freedom Mortgage initiated foreclosure proceedings, so any ICFA claim based on it could not have accrued. *See* 735 ILCS 5/15/1502.5(k). Campbell also says Freedom Mortgage failed to comply with HUD loss-mitigation guidelines. [13-1] ¶¶ 25, 35, 45(c). Those guidelines require contacting a delinquent mortgagor about their loss-mitigation options and identifying appropriate loss-mitigation options for each delinquent mortgagor. *See* Federal Housing Administration, Single Family Housing Policy Handbook, 4000.1(III)(A)(2)(h)–(i) (12/30/2016 version) (accessible at https://www.hud.gov/program_offices/housing/sfh/handbook_4000-1 → FHA's Online Housing Policy Library → https://www.allregs.com/tpl/?r=4d0dab13-fefe-48d7-a470-

6

8d4a46bd9fec → FHA Single Family Housing Policy Library → 4000.1: FHA Single Family Housing Policy Handbook → Archive 4000.1-2016 → Published on 12/30/2016 → III. Servicing and Loss Mitigation → A. Title II Insured Housing Programs Forward Mortgages → 2. Default Servicing). The loan servicer must take specific loss-mitigation actions within 45 days, 60 days, and 90 days of delinquency, and within six months of default.[2] Campbell doesn't provide the date he became delinquent on his mortgage. Without that information, I cannot pinpoint the dates on which Freedom Mortgage may have violated HUD guidelines. I therefore can't say precisely when Campbell's HUD-based ICFA claim began to accrue.

Defendant argues that Campbell's ICFA claim accrued the date of the foreclosure filing, June 19, 2018. [10] at 3–4 (argument incorporated into defendant's Motion in Opposition to Leave to Amend, [16] at 6). It cites to Campbell's statement that he began to experience "stress and tension" as a "result of the foreclosure action

---

[2] *See* Federal Housing Administration, Single Family Housing Policy Handbook, 4000.1(III)(A)(2)(h)(iii)(B) (12/30/2016 version) (within 45 days of delinquency, the "Mortgagee should begin analysis to identify appropriate Loss Mitigation Options, if any"); *id.* at (III)(A)(2)(h)(x)(A)(1) ("[N]o later than the 60th Day from the date payment was due, the Mortgagee must send" a cover letter and HUD form. The cover letter must include, among other things, "a request for current Borrower financial information necessary for Loss Mitigation analysis."); *id.* at (III)(A)(2)(h)(iii)(B) (within 90 days of delinquency, the "Mortgagee must have evaluated all Loss Mitigation Options to determine whether any are appropriate. The Mortgagee must reevaluate for Loss Mitigation each month thereafter."); *id.* at (III)(A)(2)(h) ("The Mortgagee must determine the Borrower's ability to make monthly Mortgage Payments and take loss mitigation action or commence foreclosure, if loss mitigation is not feasible, within six months of the date of Default"). *See also id.* at (III)(A)(2)(h)(v)(A) ("Promptly after establishing live contact, the Mortgagee must determine whether the Borrower is occupying the Property, ascertain the reason for the delinquency, and inform the Borrower about the availability of Loss Mitigation Options."); *id.* at (III)(A)(2)(i)(v)(B) (90-Day Review Requirement: before four monthly installments are due and unpaid, Mortgagee must…"attempt to complete its evaluation of the Mortgage for all appropriate Loss Mitigation Options").

7

*being initiated.*" [1] ¶ 17 (emphasis added by defendant). But at least as to the HUD guidelines-based ICFA claims, there was no violation until 45, 60, and 90 days post-delinquency and six months after default. Those dates might have come before Freedom Mortgage initiated foreclosure, or they might have come after. Either way, the HUD-based claims didn't accrue on June 19, 2018.

The latest they could have accrued, though, is still outside the statute of limitations. Campbell says that he was delinquent on payments when Freedom Mortgage initiated foreclosure proceedings. [13-1] ¶ 43. He doesn't specify how many days he'd been delinquent, but the latest possible date of delinquency would have been the day foreclosure proceedings were initiated, June 19, 2018. Therefore, the latest possible date on which Freedom Mortgage could have committed a HUD-based ICFA violation was seven months after that date: January 19, 2019. (Freedom Mortgage was required to take specific loss-mitigation action within six months after default. A borrower enters default when he "fails to make any payment or to perform any other obligation under the Mortgage for a period of 30 days." Federal Housing Administration, Single Family Housing Policy Handbook: Glossary (9/30/2016 version) (accessible at https://www.hud.gov/ program_offices/ housing/ sfh/ handbook_4000-1 → FHA's Online Housing Policy Library → https://www.allregs.com/tpl/?r=4d0dab13-fefe-48d7-a470-8d4a46bd9fec → FHA Single Family Housing Policy Library → 4000.1: FHA Single Family Housing Policy Handbook → Archive 4000.1-2016 → Published on 12/30/2016 → Glossary). In other words, Freedom Mortgage was required to take loss-mitigation action within seven

8

months of the date Campbell became delinquent.) Campbell filed his original complaint on March 21, 2022, two months after January 19, 2022, the latest date the statute of limitations could have expired.

Campbell also alleges that Freedom Mortgage caused substantial injury by damaging his credit. [13-1] ¶ 55. Credit damage can form the basis of an ICFA claim. *See Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 20–21 (1st Dist. 2009) (defendant forced plaintiff to either pay off entire outstanding balance on installment contract or have car repossessed; plaintiff suffered substantial injury because his credit rating was damaged and he lost his vehicle). Any damage to Campbell's credit was caused by initiation of foreclosure proceedings (if not also from being in delinquency and default before that). The statute of limitations on such a claim ran out three years after that, at the latest, on June 19, 2021.

In his brief in support of his motion for leave to amend, Campbell says his "complaint invokes the discovery rule." [17] at 4. That rule "postpones the beginning of the limitations period to the date when the plaintiff discovers or should have discovered that he has been injured." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). But plaintiff says nothing in his complaint about discovering relevant facts only after initiation of foreclosure proceedings. In any event, the discovery rule does not help him. It is already baked into the ICFA accrual rule; an ICFA claim doesn't accrue until a plaintiff discovers (or should have discovered) his injury. *See Knox College*, 88 Ill.2d at 414. Here, Campbell concedes he was aware of the foreclosure proceedings and so should have discovered any injury to his credit without

9

any more facts. The statute of limitations has expired on any claim based on credit damage from the initiation of foreclosure proceedings.

### C. Real Estate Settlement Procedures Act

The Real Estate Settlement Procedures Act and its implementing regulations impose certain requirements on servicers of "federally related mortgage loans." 12 U.S.C. §§ 2601, *et seq.*; 12 C.F.R. § 1024.2(b). Campbell alleges that Freedom Mortgage failed to comply with some of those regulations. He says Freedom didn't: "make good faith efforts to establish live contact with a [delinquent] borrower no later than the 36th day of delinquency," [13-1] ¶ 60 (quoting § 1024.39(a)); maintain policies and procedures to facilitate continuity of contact between him and Freedom, [13-1] ¶ 61 (presumably referring to § 1024.40); review Campbell for loss mitigation before initiating foreclosure proceedings, [13-1] ¶ 62 (presumably referring to either § 1024.38(b)(2) or § 1024.40(b)). As is true of the HUD guidelines, these RESPA regulations are tied to the date of delinquency. They require certain actions no later than 36 and 45 days after a borrower enters delinquency. §§ 1024.39(a), 1024.40. As was true of the ICFA claims, the latest possible RESPA violation (45 days after June 19, 2018) was also outside the statute of limitations.

### D. Continuing Violation

Campbell argues that even if claims about the first foreclosure by itself are time-barred, the second foreclosure establishes a continuing violation. [17] at 5. The continuing-violation doctrine applies when "a tort involves a continued repeated injury." *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (quoting *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005)). The doctrine "allows

a complainant to obtain relief for a time-barred act…by linking it with acts that fall within the statutory limitations period." *Id.* (quoting *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999)). However, actions "so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together in a single chain, a single course of conduct, to defeat the statute of limitations" by applying the continuing-violation rule. *Id.* (quoting *Filipovic*, 176 F.3d at 396). Campbell says that because Freedom Mortgage's conduct counts as a continuing violation, the statute of limitations didn't start to run until initiation of the second foreclosure. [17] at 5.

The two foreclosure actions were discrete acts, similar to the IRS's three discrete attempts to collect taxes in *Kovacs*. 614 F.3d 666. Campbell's claim doesn't depend on the cumulative nature of Freedom Mortgage's acts. *See Rodrigue*, 406 F.3d at 443. The fact that Freedom Mortgage attempted to foreclose on Campbell's home twice is "irrelevant [to Campbell's] right or ability to sue." *Id.* Whether Freedom tried to foreclose once or ten times, Campbell had a valid cause of action; "nothing about the repeated or ongoing nature of [Freedom Mortgage's] conduct affect[s] the nature or validity of [Campbell's] suit, beyond increasing [his] damages." *Id.* Campbell cannot use Freedom Mortgage's second foreclosure attempt to hook in the first foreclosure attempt. He can, however, base his complaint on the second foreclosure attempt alone, since it remains within the statute of limitations. Campbell may therefore amend by adding allegations about Freedom Mortgage's second foreclosure

11

attempt, as well as causes of action under RESPA based on the second foreclosure attempt.

**IV. Conclusion**

Plaintiff's motion for leave to file an amended complaint, [13], is granted in part. Defendant's motion to dismiss, [9], is terminated as moot. Plaintiff shall file his amended complaint (limited to timely claims based on the initiation of the second foreclosure case) by 2/21/23. If plaintiff does not file an amended complaint by the deadline, the case will be dismissed for want of prosecution. Defendant shall respond to the amended complaint by 3/7/23, and defense counsel shall consult with plaintiff and file a status report with a proposed case schedule by 3/10/23.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 31, 2023